**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA**, |
| Plaintiff, |
| v. |
| **DEON COLE**, |
| Defendant. |

Case No. 1:20-cr-00044 (TNM)

**MEMORANDUM AND ORDER**

In February, a grand jury indicted Deon Cole on one count of unlawful possession of a firearm and ammunition by a convicted felon. Indictment at 1, ECF No. 5. Magistrate Judge Harvey ordered him detained pending trial. Order of Detention at 1, ECF No. 8. He is being held at the D.C. Jail. Def.'s Mot. at 2, ECF No. 13.[1] Last week, Cole filed an emergency motion to revoke Judge Harvey's order of detention, citing the COVID-19 pandemic. *Id.* at 1. The Government opposes Cole's release. Gov't Opp'n, ECF No. 14. Upon careful consideration of the parties' briefs, the relevant law, and the entire record of this case, the Court denies Cole's motion for the reasons below.

**I.**

According to the Government's proffer, officers with the Metropolitan Police Department encountered Cole in the early evening on February 13, 2020. Order of Detention at 3. While patrolling a residential area in northeast D.C., they drove into an alley and observed several people there. *Id.* Two officers saw Cole "walking away, going behind a vehicle, leaning over,

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

and doing something near his waistband." *Id.* One officer approached Cole and told him she was going to pat him down. *Id.* In response, he opened his jacket, started spinning, and said "You can't touch me." *Id.* The second officer observed a bulge in Cole's groin area "that had a sharp line inconsistent with human anatomy." *Id.* The first officer felt the object and determined that it was a firearm. *Id.* The officers tried to recover the firearm, but Cole "moved around, forcing the firearm deeper into his pants." *Id.* The officers were eventually able to recover a Glock Model 19, .9 millimeter handgun from Cole's pants. *Id.* It was loaded with twelve rounds of ammunition in the magazine. *Id.*; Criminal Compl. Statement of Facts at 1, ECF No. 1-1. The firearm had been reported stolen. Criminal Compl. Statement of Facts at 1.

The officers read Cole his *Miranda* rights, and he waived them. *Id.* When asked where he got the firearm, he stated that he was holding it for someone. *Id.* A criminal history check revealed that Cole had a prior felony conviction in Maryland state court for armed robbery, for which he was sentenced to 20 years in prison. *Id.* He was—and remains—on supervision for that offense. Pretrial Services Report at 4, ECF No. 3.

Magistrate Judge Harvey granted the Government's oral motion for temporary detention at Cole's initial appearance and set a detention hearing for February 19. Minute Entry (Feb. 14, 2020). On February 18, a grand jury indicted Cole on one count of unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Indictment at 1.

At the hearing on February 19, Magistrate Judge Harvey ordered Cole detained pending trial. Based on the factors in 18 U.S.C. § 3142(g), he concluded "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Order of Detention at 2. Among the reasons for

detention were the strength of the evidence, Cole's prior criminal history, his participation in criminal activity while on supervision, his history of violence and use of weapons, and his history of substance abuse. *Id.* at 2–3.

Magistrate Judge Harvey made the following findings on the factors in § 3142(g).

*First*, the "nature and circumstances of the offense charged" favored detention, because Cole, "a convicted felon on supervised release for a violent armed offense, was found in the community with a concealed, loaded firearm." *Id.* at 3. He had also resisted the officers' efforts to recover the firearm. *Id.*

*Second*, the Government's evidence was "strong." *Id.* The officers recovered a firearm from Cole's pants, and this encounter "was captured on body-worn camera footage." *Id.* While the Government "acknowledged that the alleged bulge in [Cole's] pants is not visible in the footage," it proffered that this "was due to the angles of the camera lens and the movements of the officers and [Cole]." *Id.* And Judge Harvey found that the camera footage "does reflect reactions and statements of the officers that were consistent with their observation and recovery of a firearm on [Cole's] person." *Id.*

*Third*, Cole's "history and characteristics" also favored detention. Judge Harvey recognized that Cole has "positive characteristics"—he is "a life-long resident of the D.C. area, has family support, was employed, lives with his family, is young, and has only one adult conviction." *Id.* at 4. On the other hand, this prior conviction "was for using a gun during a robbery." *Id.* And while on supervised release for that offense, he "failed to report for drug testing and has tested positive for cocaine and/or opiates on numerous occasions." *Id.* "Notably," Judge Harvey continued, "just over a month before the instant offense, [Cole] appeared for a Violation of Probation hearing for his supervision on that prior conviction, and

although he was placed back on supervision, his probation was revoked." *Id.* Judge Harvey was "also concerned by information on page 4 of the Pretrial Services Report." *Id.*; *see* Sealed Suppl. to Findings at 1, ECF No. 9.

*Fourth*, Judge Harvey determined that Cole's release would pose "a danger to the community." Order of Detention at 4. The firearm in Cole's possession had been stolen. *Id.* While the Government had "no evidence suggesting [Cole] was involved in the theft," his possession of a stolen firearm "evidences a danger stemming from felons unlawfully possessing firearms—specifically, that they facilitate the dangerous market for illegal weapons." *Id.* More, he "tested positive for cocaine and opiates at the time of his arrest in this matter." *Id.* Cole's dangerousness was evident: as "a convicted felon on supervision for a violent offense involving the use of a firearm," he "was under the influence of narcotics on the street in a residential area in possession of a concealed, loaded, stolen firearm." *Id.*

Based on these detailed findings, the magistrate judge ordered Cole detained without bond pending trial. Cole now asks this Court to revoke that order. Def.'s Mot. at 1. He invokes 18 U.S.C. §§ 3142 and 3145. *Id.* "If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). And a detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.* § 3142(f); *see United States v. Peralta*, 849 F.2d 625, 626–27 (D.C. Cir. 1988). Cole also seeks release under the Fifth and Eighth Amendments of the Constitution. Def.'s Mot. at 1.

The Court's review of a magistrate judge's detention order is de novo. *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017).

## II.

### A.

Cole first argues that, even setting aside the COVID-19 pandemic, the February 19 detention order was erroneous. Def.'s Mot. at 2, 16, 17 n.28. He seeks release on his personal recognizance, or, in the alternative, on home confinement. *Id.* at 23–24.

The standards governing pretrial detention are in 18 U.S.C. § 3142. The Court "shall order the pretrial release of the person on personal recognizance . . . unless [it] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance is not appropriate, the Court must order pretrial release subject to conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). But the Court "shall order the detention of the person before trial" if it finds by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(e)(1), (f). In making this determination, the Court must consider (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

The Court agrees with Magistrate Judge Harvey's findings under § 3142(g) and his conclusion that, "[b]y clear and convincing evidence . . . no condition or combination of

5

conditions of release will reasonably assure the safety of any other person and the community." Order of Detention at 2.

*First*, the nature and circumstances of the offense charged favor pretrial detention. While on supervision for armed robbery—a violent offense—Cole was in a residential area with a concealed, loaded firearm. *Id.* at 3. He apparently resisted the officers' attempts to recover this firearm. *Id.* These circumstances are concerning. Cole asserts that the charge—unlawful possession of a firearm and ammunition—is of a "nonviolent nature." Def.'s Mot. at 1. But carrying a loaded firearm—especially if the carrier has a violent history, including a conviction for armed robbery—has the great potential to escalate into violence. If, as the Government alleges, Cole was under the influence of cocaine and opiates at the time of the offense, this only heightens the risk of violence. Gov't Mem. at 5, ECF No. 4; Order of Detention at 4.

*Second*, the Court agrees with Judge Harvey that the evidence against Cole is strong. In an encounter captured on body-worn camera footage, officers recovered a loaded firearm from Cole's person. Order of Detention at 3. Cole allegedly told the officers that he had been holding the firearm for someone. Criminal Compl. Statement of Facts at 1. And a criminal history check revealed that he is a convicted felon and thus a prohibited person under § 922(g). *Id.*

*Third*, Cole's history and characteristics also favor detention. As Judge Harvey recognized, he does have some positive characteristics—ties to the D.C. community, family support, prior employment, and youth. Order of Detention at 4. But of great concern is the conviction for armed robbery. *Id.* That is a serious and inherently violent offense. More, Cole committed the present federal offense while on supervision for the armed robbery conviction. *Id.* This demonstrates a troubling pattern. Another worrying trend is his history of violating conditions of supervision. *Id.* Indeed, just one month before his arrest in February, he admitted

6

to a violation of probation in his Maryland case. *Id.*; Pretrial Services Report at 4. Many of his violations have involved testing positive for cocaine and opiates or failing to report for drug testing. Order of Detention at 4; Pretrial Services Report at 4.[2] These concerning characteristics—a violent criminal history, pervasive drug use, and failure to comply with conditions of supervision—outweigh Cole's positive characteristics.

*Fourth*, the Court believes that Cole poses a danger to the community, given the circumstances of the charged offense and his characteristics. Judge Harvey summed it up best: as "a convicted felon on supervision for a violent offense involving the use of a firearm," Cole "was under the influence of narcotics on the street in a residential area in possession of a concealed, loaded, stolen firearm." Order of Detention at 4. The Court has considered alternatives short of detention and finds they are insufficient here.

The Court thus finds that the reasons justifying the February 19 detention order still stand.

**B.**

Cole next argues that the COVID-19 pandemic is a new circumstance that warrants his release, even if Judge Harvey's detention order were appropriate. Def.'s Mot. at 17. Since the February 19 hearing, the COVID-19 virus "has emerged as a global, national, and local health emergency." *Id.* at 2. More than 100 inmates in the custody of the D.C. Department of Corrections ("DOC") have tested positive, and one has died. *Id.*; Gov't Opp'n at 16 & n.7. Motions like Cole's have been filed in dozens of cases in this District alone, with extensive allegations about the dangers of the viral pandemic. The Government does not contest the

---

[2] Like Judge Harvey, the Court is also concerned about other information that appears on page 4 of the Pretrial Services Report. Order of Detention at 4; Sealed Suppl. to Findings at 1.

7

virus's threat. Gov't Opp'n at 8. And, like other judges in this District and across the country, the Court takes notice of the real and serious threat that the COVID-19 pandemic poses.

Cole insists that his continued detention at the D.C. Jail is "a violation of the Bail Reform Act" because the pandemic poses a danger both to himself and the community. Def.'s Mot. at 16–17. This argument is unavailing.

Cole is 24 years old. Pretrial Services Report at 1. As the Government points out, he does not claim to have any underlying health condition that makes him more susceptible to contracting the virus or that would place him in a "high risk" category if he were infected. Gov't Opp'n at 8–9; *see* Pretrial Services Report at 2 ("Health Condition: None Reported"). This alone distinguishes Cole's case from most of the cases in which courts have ordered prisoners released because of COVID-19.

Cole instead focuses on generalized allegations about conditions at the D.C. Jail. Def.'s Mot. at 10–14, 17–18. He contends that the DOC has "proven to be ill-equipped to handle this public health crisis." *Id.* at 12. As the Government notes, however, the DOC has taken several protective measures, including banning non-attorney visits, screening visitors and incoming inmates, quarantining new inmates for 14 days, and more. Gov't Opp'n at 11–13; *see* Coronavirus Prevention, D.C. Dep't of Corrections, https://doc.dc.gov/page/coronavirus-prevention (last visited May 8, 2020).

The Court takes judicial notice of ongoing litigation over the conditions at DOC facilities. Def.'s Mot. at 13. In that case, Judge Kollar-Kotelly recently granted a temporary restraining order in favor of the challengers. *See Banks v. Booth*, No. 20-cv-849 (CKK), 2020 WL 1914896, at *1 (D.D.C. Apr. 19, 2020). She ordered the DOC to take additional measures to protect inmates from the threat of COVID-19, including "immediate steps to provide . . . daily showers,

and clean clothing and clean linens to all inmates on isolation status," as well as "appropriate and consistent implementation of social distancing policies." *Id.* at *14. The DOC must also "ensure that the triage process associated with sick call requests on the non-quarantine units is expedited and reflects appropriate sensitivity to the wide variety of symptoms associated with COVID-19." *Id.* at *13. And when "inmates are transferred from the intake unit to a different unit before the 14-day quarantine period expires, [DOC must] ensure that appropriate housing, surveillance and monitoring is afforded to the inmate in the receiving unit." *Id.* at *14.

The Court echoes Chief Judge Howell's "confidence that the [DOC] . . . will do everything it can to comply with that order so as to prevent the further spread of the virus to its residents and staff." *United States v. Sagastume-Galicia*, 20-cr-40 (BAH), 2020 WL 1935555, at *5 (D.D.C. Apr. 22, 2020). Judge Kollar-Kotelly's order should ameliorate several concerns that Cole raises about the unhygienic conditions at the D.C. Jail.

Cole also maintains that his continued detention threatens the community—"inmates, correctional officers, and the communities of which those inmates and officers are a part." Def.'s Mot. at 18. The Court is unconvinced, and Cole fails to explain how he would pose *less* of a risk to the community if released.

For one, "the risk of contracting COVID-19 pertains whether the defendant is released or detained." Minute Order, *United States v. Oseguera Gonzalez*, 20-cr-40 (BAH) (D.D.C. Mar. 24, 2020). In fact, if the risk of contracting the virus at the D.C. Jail is as high as Cole suggests—and the Court does not necessarily accept his argument on this point—releasing him now would potentially inject a carrier of the virus into the D.C. community at a time when the region is reacting to an explosion of COVID-19 cases.

More, as Judge Ketanji Brown Jackson has observed, releasing a defendant into high-supervision home detainment may pose "heightened safety risks . . . to the probation officers who would be tasked with monitoring his behavior while he is out of jail on pretrial release." *United States v. Lee*, 19-cr-298, 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). Indeed, Pretrial Services and Probation are currently unable to conduct many of their normal in-person community contacts and monitoring services. So there is a risk that Cole would actually pose a *greater* threat to the community were he released at this point.

The COVID-19 pandemic thus does nothing to alter this Court's analysis of the § 3142(g) factors. There still exists "no condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f).

Other judges in this District have reached the same conclusion in cases like Cole's. For example, Judge Cooper denied a defendant's motion for release because "present conditions (which include preventative measures by the [DOC]) do not support the release of individuals whose detention is clearly mandated by application of the factors set forth in 18 U.S.C. § 3142(g) based solely on a generalized risk to otherwise healthy detainees." Minute Order, *United States v. Watkins*, 20-cr-19 (D.D.C. Mar. 31, 2020). That defendant, like Cole, was charged with possession of a loaded firearm, had prior felonies, and was arrested while on supervised release for a prior conviction. *Id.* Judge Cooper determined that "no combination of conditions will suffice to assure the public's safety." *Id.*

So too here. The Court is mindful of the very real risks that contracting COVID-19 may pose—whether Cole is detained or not. But ultimately, "any heightened risk posed by pretrial detention does not alter the balance of the statutory factors Congress prescribed for determining the propriety of detention, which continue to weigh heavily in favor of detention." Minute

Order, *Oseguera Gonzalez*, 20-cr-40 (BAH) (D.D.C. Mar. 24, 2020). The Court thus rejects Cole's arguments for release under the Bail Reform Act.

### C.

Finally, Cole urges that the Fifth and Eighth Amendments require his release. Def.'s Mot. at 19–23. The Fifth Amendment protects against deprivation of life or liberty "without due process of law." U.S. Const. amend. V. The Eighth Amendment prohibits "cruel and unusual punishments." *Id.* amend. VIII. Neither Amendment provides a basis for Cole's release.

To begin, the Eighth Amendment does not apply here, because Cole is a pretrial detainee. The Eighth Amendment's protections do not attach "until after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)).

The applicable provision is the Fifth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."). Due process forbids conditions of confinement that "amount to punishment of the detainee." *Id.* at 535. A condition may amount to punishment if it "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Id.* at 539. The Court's analysis of this question must not reflect its own "idea of how best to operate a detention facility." *Id.*

Due Process also requires jails to provide medical care to detainees who need it. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244–45 (1983). And "prison overcrowding may violate the Constitution where it is so egregious that it endangers the safety of inmates." *Brogsdale v. Barry*, 926 F.2d 1184, 1188 (D.C. Cir. 1981).

Cole claims that the conditions at the D.C. jail amount to "punishment" and deprive him of his "right to adequate medical care." Def.'s Mot. at 19–21. But his generalized allegations do not rise to the level of a due process violation. Recall that the DOC has taken several preventative measures to combat the COVID-19 threat. *See supra* Section II.B. Faced with the difficult task of shielding the community from harm while also protecting the inmate population, the DOC certainly is not imposing "arbitrary or purposeless" conditions. *Bell*, 441 U.S. at 539. Inmates are receiving medical attention as required, and Cole does not allege that the D.C. Jail has deprived him of any needed care. *See City of Revere*, 463 U.S. at 244–45.

In short, the DOC's response has been far from "so egregious that it endangers the safety of inmates." *Brogsdale*, 926 F.2d at 1188; *see also Lee*, 19-cr-298 (KBJ), 2020 WL 1541049, at *5 ("[Defendant] has not alleged that prison authorities have been deliberately indifferent to this threat, and he would be hard pressed to do so, given the aggressive precautions that DOC appears to have undertaken to prevent the spread of COVID-19 within its facilities."). And as noted, Judge Kollar-Kotelly recently ordered the DOC to implement additional controls that address many of Cole's concerns. *See supra* Section II.B. Given the existing and anticipated controls, Cole has not shown a due process violation. The Court agrees with other judges in this District that have likewise recently rejected similar Fifth Amendment claims from DOC detainees. *See, e.g.*, *United States v. Otunyo*, 18-cr-251 (BAH), 2020 WL 2065041, at *11–13 (D.D.C. Apr. 28, 2020); *United States v. Riggins*, 20-cr-10 (CKK), 2020 WL 1984263, at *9 (D.D.C. Apr. 27, 2020).

**III.**

For all these reasons, it is hereby

**ORDERED** that the Defendant's [13] Emergency Motion to Revoke Order of Detention is DENIED.[3]

Dated: May 8, 2020                                          TREVOR N. McFADDEN, U.S.D.J.

---

[3] Cole does not request a hearing on his motion, and the Court finds one unnecessary here. *See* LCrR 47(f).